UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 19 CR 318 (JMF)

IFEANYI EKE,

Defendant. Plea and Sentence (via CourtCall)

------------------------------x

New York, N.Y.
April 13, 2021
11:05 a.m.

Before:

HON. JESSE M. FURMAN,

District Judge

APPEARANCES

AUDREY STRAUSS
United States Attorney for the Southern District of New York
BY: OLGA ZVEROVICH
Assistant United States Attorney

COHEN FRANKEL & RUGGIERO, LLP
Attorneys for Defendant
BY: MARK I. COHEN

(Case called)

THE COURT: Good morning.

If I can have folks mute their audio if you are not speaking, that might minimize background noise, if you are able to do that. If not, then don't worry about it.

In any event, before I take appearances, we are here in the matter of United States v. Eke, 19 CR 318. We are proceeding on CourtCall in light of the fact that we are still dealing with the effects of the COVID-19 pandemic, but let me begin by taking appearances, and then we will take care of some housekeeping matters.

Beginning with counsel for the government.

MS. ZVEROVICH: Good morning, your Honor, Olga Zverovich for the government.

THE COURT: Terrific. I assume you are able to hear and see, Ms. Zverovich?

MS. ZVEROVICH: Yes, your Honor.

THE COURT: Counsel for Mr. Eke.

MR. COHEN: Good morning, your Honor, Mark Cohen on behalf of Mr. Eke.

THE COURT: Good morning, Mr. Cohen. Good to see you. Hope you are well. You are able to hear and see as well?

MR. COHEN: Yes, your Honor. And same to you, sir.

THE COURT: Mr. Eke, how are you?

THE DEFENDANT: Good morning, sir. Fine.

THE COURT: Are you able to hear and see me OK?

THE DEFENDANT: Yes.

THE COURT: Terrific. If at any point during this proceeding today anyone has any trouble either hearing or seeing, please figure out a way to get that message to us, and we will try to figure out what the problem is.

A couple of reminders. This is a public conference, as it would be if we were in open court. Also, a reminder to everyone, you may not record the conference.

With that, we are here for a combined plea and sentencing proceeding. Hopefully, we will get through all of it, but we have a lot to get through, so let's get started.

As I said, we are still in the midst of the COVID-19 pandemic, so we are proceeding remotely using the CourtCall platform pursuant to the authority provided by the CARES Act and the standing orders that former Chief Judge McMahon entered pursuant to that act.

I have a waiver form here that appears to have been signed by Mr. Cohen and by Mr. Cohen on behalf of Mr. Eke.

Mr. Cohen, can you tell me about the process you followed for getting that form signed?

MR. COHEN: Certainly, your Honor.

Your Honor, we had a number, countless telephonic conferences with Mr. Eke in the weeks leading up to both our request for this hearing pursuant to the CARES Act, as well as

subsequently in preparation. In fact, both myself and an associate attorney, Gillian Feehan of this firm, have worked with Mr. Eke. We obtained his permission with the use of the form that has been used in the Southern District since the pandemic started, the one that's before your Honor, and we obtained oral consent from Mr. Eke to execute the document on his behalf. He is prepared for an allocution on those facts, sir.

THE COURT: Very good.

Mr. Eke, as you just heard, Mr. Cohen told me that he spoke to you about the forms that he signed on your behalf. Right now I'm just asking about the waiver, the right to be present at a criminal proceeding form in which you appear to have acknowledged that you understand that you could conduct this proceeding, it could be in court, in person for this proceeding with Mr. Cohen by your side, that you understand that, in light of the pandemic and the difficulties of holding in-court proceedings, you are consenting to proceed by video conference, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You discussed that with Mr. Cohen?

THE DEFENDANT: Yeah, I did. I gave him my signature.

THE COURT: Did you authorize him to sign that form on your behalf?

THE DEFENDANT: Yes, sir.

THE COURT: Let me just emphasize that if at any point during the proceeding today you wish to speak with Mr. Cohen, we do, at least in theory, have the means of putting you two in a breakout room where you can speak privately. If you would like to speak with him, let me know and we will try to make that work.

In addition to confirming that Mr. Eke consents, I do need to make a finding that for specific reasons the plea and sentencing cannot be delayed without serious harm to the interests of justice. Given how long the pandemic has been going on and how long this case has been pending, I think that it is in the interests of the system writ large to move things along and in the interests of Mr. Eke to have some finality, in the interests of Mr. Eke and the system to get him designated to a better facility than the one he's been in, and on that basis I am prepared to find and do find that a delay in this proceeding would cause serious harm to the interests of justice.

Ms. Zverovich, do you agree on that basis that we can proceed by video today?

MS. ZVEROVICH: Your Honor, I do agree, and I further will submit that the interests of the victims in this case in the prompt entry of a restitution order further counsel in favor of this proceeding.

THE COURT: I agree, and I am happy to add that to my

findings.

Mr. Cohen, do you agree on that basis that we can proceed by video?

MR. COHEN: Yes, sir.

THE COURT: Very good.

Before I get into the plea, let me comply with the Due Process Protections Act that was passed last fall signed by the president which requires me to enter a written order, which I have already done, and also orally order to remind the government of its obligations under *Brady v. Maryland* and its progeny.

Ms. Zverovich, as I am sure you know, under that case law, you have the obligation to disclose to the defense all information, whether admissible or not, that is favorable to the defendant, material either to guilt or to punishment and known to the prosecution. The prosecution must make good-faith effort to disclose such information to the defense as soon as reasonably possible.

The failure to do so may result in any number of consequences, including a continuance, sanctions, dismissal, or a vacatur of a conviction, and, as I have mentioned, I have already entered a written order.

Can you confirm, Ms. Zverovich, that you have read that order and you are familiar with it and will follow your obligations?

MS. ZVEROVICH: Your Honor, I can confirm that I've read the order, I am familiar with the government's obligations, and I have and will continue to comply with them.

THE COURT: Terrific.

On a different note, can you confirm that any victims who are entitled to notice of these proceedings have been provided with that notice?

MS. ZVEROVICH: Yes, your Honor.

THE COURT: Very good.

Mr. Eke, I have been advised that you wish to plead guilty to Count One of the indictment, 19 CR 318, is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before I accept your guilty plea, I need to ask you certain questions to establish to my satisfaction that you wish to plead guilty because you are in fact guilty and not for some other reason, to ensure that you understand the rights that you would be giving up by pleading guilty, and to ensure that you understand the potential consequences of a guilty plea.

It is critical that you understand each of my questions before you answer the questions. So if there is something you don't understand, please let me know and Mr. Cohen or I will explain it to you more fully.

Do you understand all that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Would you please raise your right hand so I can administer the oath to you now.

(Defendant sworn)

THE COURT: Do you understand that you are now under oath, just as you would be if you were in open court, which means that if you answer any of my questions falsely, you could be subject to prosecution for the separate crime of perjury.

Do you understand?

THE DEFENDANT: Yes, your Honor.

THE COURT: Can you please state your full name.

THE DEFENDANT: Ifeanyi Eke.

THE COURT: How old are you, Mr. Eke?

THE DEFENDANT: I'm 33 years old.

THE COURT: How far did you go in school?

THE DEFENDANT: College.

THE COURT: Where was that, in Nigeria or here?

THE DEFENDANT: In Nigeria.

THE COURT: I think you have been treated or hospitalized for mental illness, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Are you currently under the care of a doctor or mental health professional?

THE DEFENDANT: No, sir.

THE COURT: Are you currently taking medications for

your mental health issues?

THE DEFENDANT: No, sir.

THE COURT: I understand you've got some mental health issues, obviously. You were examined last year when you were in detention and the letters that were submitted on your behalf, which we will discuss later, also reference some mental health issues.

Would any of those prevent or hinder your ability to understand what's happening here today?

THE DEFENDANT: No, sir.

THE COURT: Again, you are not currently taking any medication in connection with your mental health issues, is that correct?

THE DEFENDANT: I used to take medication, but I quit.

THE COURT: At present you are not doing or taking anything that would interfere with your ability to understand, is that correct?

THE DEFENDANT: No, sir. I am not taking any medication.

THE COURT: Have you ever been treated or hospitalized for any type of addiction, including drug or alcohol addiction?

THE DEFENDANT: No, sir.

THE COURT: In the last 48 hours, have you taken any medicine, pills, drugs, or had any alcohol?

THE DEFENDANT: No, your Honor.

THE COURT: Is your mind clear today?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand what's happening here today?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had any trouble understanding any of my questions?

THE DEFENDANT: No, sir.

THE COURT: Mr. Cohen, I think you mentioned that you discussed this matter with Mr. Eke, is that correct?

MR. COHEN: Yes, sir.

THE COURT: Are you comfortable and confident that he understands the rights that he would be giving up by pleading guilty?

MR. COHEN: Judge, I'm certain of it.

THE COURT: Do you believe that he is capable of understanding the nature of these proceedings?

MR. COHEN: Judge, he's competent.

THE COURT: Just to confirm, again, given that there was the history of some mental health issues in connection with this case, you are comfortable and confident that he's able to understand, notwithstanding that history?

MR. COHEN: Judge, I'm proud to say that we have spent a lot of time with Mr. Eke, both myself and Ms. Feehan. We have paid particular attention to his well-being during these

months, and I believe him to be competent and comfortable with the decisions that he's making to proceed today.

THE COURT: Does either counsel have any doubt as to the defendant's competence to plead guilty at this time?

Ms. Zverovich.

MS. ZVEROVICH: No, your Honor.

THE COURT: Mr. Cohen.

MR. COHEN: No, sir.

THE COURT: On the basis of Mr. Eke's responses to my questions, my observations of his demeanor on the video conference, and the representations of counsel, I find that he is fully competent to enter an informed plea of guilty at this time.

Mr. Eke, have you received and read a copy of the indictment containing the charge to which you intend to plead guilty?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had enough time to discuss with Mr. Cohen, with your lawyers, that charge and any possible defenses to that charge?

THE DEFENDANT: Yes, sir.

THE COURT: Have your lawyers explained to you what the consequences of entering a guilty plea are?

THE DEFENDANT: Yes, sir.

THE COURT: Are you satisfied with their

representation of you?

THE DEFENDANT: Yes, sir.

THE COURT: I want to tell you about certain rights that you have that you are giving up by pleading guilty and would ask you, again, to just listen carefully. If there is something you don't understand, let me or Mr. Cohen know.

Under the Constitution and laws of the United States, you have the right to plead not guilty and to go to trial on the charges in the indictment.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: In particular, if you did plead not guilty, you would be entitled to a speedy and public trial by a jury on the charges in the indictment.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: At that trial you would be presumed to be innocent and you would not have to prove that you were innocent. Instead, the government would be required to prove your guilt by competent evidence beyond a reasonable doubt before a jury could find you guilty.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: In order to find you guilty, a jury of 12 people would have to agree unanimously that you were guilty.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: At that trial, and at every stage of your case, you would be entitled to a lawyer and if you could not afford a lawyer, one would be appointed at public expense, free of cost, to represent you.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: During a trial, the witnesses for the government would have to come to court and testify in your presence and your lawyer would have an opportunity to cross-examine those witnesses and object to any evidence offered against you. You would also have an opportunity to present evidence in your own defense, and you would have the right to have subpoenas issued or other process used to compel witnesses to come to court and testify in your defense.

Do you understand all of that?

THE DEFENDANT: Yes, sir.

THE COURT: At a trial, you would also have the right to testify in your own defense, if you chose to do so, but you would have the right not to testify as well. And if you chose not to testify, then no one, including the jury, could draw any inference or suggestion of your guilt from the fact that you did not testify.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before trial, you would have an opportunity, if you have not waived it, to seek suppression or exclusion of any evidence that the government would use against you at a trial.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you were convicted at a trial, you would have the right to appeal that verdict and any pretrial rulings that I made in connection with your case.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty, you will also have to give up your right not to incriminate yourself because I may ask you questions about what you did in order to satisfy myself that you are guilty as charged, and you would have to admit and acknowledge your guilt.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: If you plead guilty and if I accept your guilty plea, you will give up your right to a trial and the other rights that we have discussed, other than your right to a lawyer, which you keep whether or not you plead guilty, but there will be no trial and I will enter a judgment of guilty and sentence you on the basis of a presentence report and the

submissions that I have already received from lawyers. There will be no appeal with respect to whether you did or did not commit the offense to which you are pleading guilty or with respect to whether the government could use the evidence that it has against you.

Do you understand all that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Even now, as you are entering this plea, you have the right to change your mind, to plead not guilty and to go to trial on the charges in the indictment.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand each and every one of the rights that we have just explained to you?

THE DEFENDANT: Yeah.

THE COURT: Are you willing to give up your right to a trial and the other rights that we have discussed?

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand that you are charged with conspiracy to commit wire fraud, in violation of 18 U.S. Code, Section 1349.

Do you understand that that is the charge?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Zverovich, would you please state the elements of that offense.

MS. ZVEROVICH: Yes, your Honor.

The elements of the conspiracy to commit wire fraud, which the government would be required to prove beyond a reasonable doubt if the case proceeded to trial, are the following: First, that two or more persons in some way or manner entered into a conspiracy to commit wire fraud; and, second, that the defendant, Mr. Eke, knowingly and willfully became a member of that conspiracy.

The elements of wire fraud, which is the object of the charged conspiracy, are the following: First, that there was a scheme or artifice to defraud or to obtain money or property by materially false and fraudulent pretenses, representations, or promises, as alleged in the indictment; second, that the defendant knowingly and willfully participated in the scheme or artifice to defraud, knowledge of its fraudulent nature, and with specific intent to defraud; and, third, that in the execution of the scheme the defendant either used or caused the use of interstate wires, as alleged in the indictment.

In addition to these elements, the government would be required to prove venue in the Southern District of New York by a preponderance of the evidence.

THE COURT: Thank you.

Mr. Eke, do you understand that if you were to go to trial, that with the exception of the venue requirement that Ms. Zverovich mentioned, as to which the government's burden at

trial would be the preponderance of the evidence, that the government would have to prove each of the other elements beyond a reasonable doubt before a jury could find you guilty.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Let me tell you now about the maximum possible penalties for this crime. By maximum, I mean the most that could possibly be imposed upon you. It doesn't mean that that is the sentence that you will receive, but you do have to understand that by pleading guilty you are exposing yourself to a combination of punishments up to the statutory maximum.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: First, let me tell you about the possible restrictions on your liberty. The maximum term of imprisonment for this crime is 20 years, which could be followed by up to three years of supervised release. Supervised release means that you would be subject to supervision by the probation department. There would be rules of supervised release that you would be required to follow. If you violated those rules, you could be returned to prison to serve additional time without a jury trial and without credit for either the time on your underlying sentence or time spent on postrelease supervision.

Do you understand all that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You should understand that there is no parole in the federal system in this country, which means that if you were sentenced to prison you would not be released early on parole. There is a limited opportunity to earn credit for good behavior. But if you were sentenced to prison, you would have to serve at least 85 percent of the time to which you were sentenced.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: In addition to these potential restrictions on your liberty, the maximum possible punishment also includes certain financial penalties: First, the maximum allowable fine is the greatest of $250,000 or twice the gross pecuniary or financial gain derived from the offense, or twice the gross pecuniary loss to someone other than you as a result of the offense; second, I can order restitution to any person or entity injured as a result of your criminal conduct, which the government has calculated here to be $2,691,908 30; third, I can order you to forfeit all property derived from the offense or used to facilitate the offense, since I have a proposed order which I will discuss later in these proceedings in which you agree to entry of a money judgment ordering you to forfeit $365,205 in United States currency. Finally, I must order a special assessment of $100.

Do you understand that those are the maximum possible penalties?

THE DEFENDANT: Yes, your Honor.

THE COURT: I understand that you are not a citizen of the United States, is that correct?

THE DEFENDANT: Correct, sir.

THE COURT: Do you understand that as a result of your guilty plea that there may be adverse effects on your immigration status in this country, that you may, for example, be detained by the immigration authorities following the completion of your criminal sentence, that you may be removed or deported from the United States, that you may be denied citizenship in the United States, and that you may be denied admission into the United States in the future.

Do you understand that those are among the potential immigration consequences of your guilty plea?

THE DEFENDANT: Yes, sir.

THE COURT: Have you discussed those potential consequences with Mr. Cohen, with your lawyers?

THE DEFENDANT: Yes, sir.

THE COURT: Do you understand that as a result of your guilty plea you may also lose certain valuable civil rights in this country, to the extent that you have them or could otherwise obtain them now, such as the right to vote, the right to hold public office, the right to serve on a jury, and the

right to possess any kind of firearm.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Are you serving any other sentence or being prosecuted in any other court at this time?

THE DEFENDANT: No, your Honor.

THE COURT: Do you understand that if Mr. Cohen or anyone else has attempted to predict what your sentence will be in this matter that their predictions could be wrong.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You should understand that no one, not your lawyer, not the lawyer for the government, not the probation officer who prepared the presentence report, no one can give you any promise or assurance of what your sentence will be in this matter, and that's because your sentence will be determined by me, and by me alone, and that will be on the basis of the presentence report that has been prepared. I'll do my own independent calculation of how the United States Sentencing Guidelines apply to your case. I'll consider the submissions that the lawyers have already made on your behalf and on the government's behalf, and ultimately I will consider the factors that are set forth in a statute that governs sentencings, Title 18, United States Code, Section 3553(a). I will consider all of that before determining and imposing a

sentence.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Normally, sentencing is delayed after a plea, but in this case you consented to and agreed to proceed today with both your plea and your sentence, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: You understand that, in light of that, the presentence report has already been prepared and the lawyers have already made their sentencing submissions to me.

Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: So you understand that I've read all of that already, even though you haven't yet entered a guilty plea.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, even if your sentence is different from what your lawyer or anyone else has told you that it might be, even if it is different from the probation department's recommendation in the presentence report, even if it is different from what you hope or expect it would be, and even if it is different from what may be in the plea agreement with the government that we will discuss in one moment, you will still be bound by your guilty plea and you will not be allowed to

withdraw your plea.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Now, I understand that there is a written plea agreement that you and Mr. Cohen have entered into with the lawyers from the government, is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: I have the original or an electronic copy of the plea agreement, dated August 28, 2020, from Assistant U.S. Attorneys Ms. Zverovich and Mr. Schaeffer to Mr. Cohen.

Mr. Zverovich, is that the correct version of the plea agreement?

MS. ZVEROVICH: It is, your Honor.

THE COURT: Give me one moment, please.

Mr. Eke, have you seen a copy of that plea agreement?

THE DEFENDANT: Yes. My attorney read it earlier to me.

THE COURT: He read it to you word by word?

THE DEFENDANT: Yes, sir.

THE COURT: The copy that I have appears to have been signed by Mr. Cohen and by Mr. Cohen on your behalf.

Did you authorize him to sign it on your behalf?

THE DEFENDANT: Yes, your Honor.

THE COURT: Did you do that after he had read it to you?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before you authorized him to sign it on your behalf, did he explain it to you and answer any questions you had about the plea agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: Before you authorized him to sign it on your behalf, did you understand the plea agreement fully?

THE DEFENDANT: To the best of my knowledge, sir.

THE COURT: Mr. Cohen, can you tell me a bit about the process you used to sign the agreement on Mr. Eke's behalf.

MR. COHEN: Certainly, Judge.

Judge, as you know, we have had the agreement for quite sometime. We have gone over the agreement with Mr. Eke word for word on numerous occasions, and I can tell the Court, as you know, that I didn't sign it until yesterday.

And the reason that I waited is because I did have a final prearranged attorney-client conference with my client yesterday, and I wanted to make certain that we were going to move forward.

So after discussing matters yet again with him yesterday, I executed the document after obtaining his authorization, and then I sent it into your Honor's deputy, executed by me on my client's behalf.

THE COURT: Thank you.

Mr. Eke, one of the features of your agreement with

the government is that you and the government have agreed on how the United States Sentencing Guidelines apply to your case, is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: It's important for you to understand that that agreement is binding on you and it is binding on the government, but it is not binding on me. I have my own independent obligation to determine what the correct guidelines range is. I'm not suggesting to you that I will calculate the guidelines differently than you agree to, but I could. And even if I did, you would still be bound by your guilty plea and your plea agreement.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Ms. Zverovich, let me ask you, the plea agreement seems to have a different amount for both forfeiture and restitution. I think your sentencing letters explains a different amount for restitution. It didn't explain the forfeiture amount. Can just explain that. Obviously, it's far lower than the amount to which Mr. Eke agreed in the agreement. I don't think there is any issue on that. But if you could just explain that, it would be helpful.

MS. ZVEROVICH: Absolutely, your Honor.

Your Honor, upon further consideration and in light of the *Honeycutt* decision, the government has limited the

forfeiture in this case to allow for that which Mr. Eke personally received from victims into bank accounts that he controlled, and that's approximately $365,000.

THE COURT: Mr. Eke, in this agreement you admit to the forfeiture allegation in the indictment and agree to forfeit to the United States in excess of $2.7 million. As you heard, that's not the amount of forfeiture that the government is now seeking, but you do you admit to the forfeiture allegation and consent to forfeiture up to that amount?

THE DEFENDANT: I think the amount changed to 360 or 365. I don't know. I agree to that.

THE COURT: As Ms. Zverovich explained, the government has changed the amount that it's seeking in forfeiture to approximately $365,000, and indeed I have a proposed order here that appears to have been signed by Mr. Cohen and by Mr. Cohen on your behalf which would order you to forfeit $365,205 in United States currency.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: In the plea agreement you also agree to make restitution. In the agreement it's also in the amount of approximately almost $2.8 million, but I have here a proposed restitution order, also signed by Mr. Cohen and by Mr. Cohen on your behalf, ordering restitution in a slightly lower amount, namely $2,691,908.30.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: You understand that in the agreement you are agreeing to make restitution in that amount, is that correct?

THE DEFENDANT: Yes, your Honor.

THE COURT: In your agreement you also waive the right to appeal or otherwise challenge any sentence that is within or below the sentencing guidelines range of 63 to 78 months' imprisonment. That means that if I were to sentence you to 78 months in prison or anything less than 78 months in prison, you would have no right to appeal or otherwise challenge that sentence.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

THE COURT: Does this written plea agreement constitute your complete and total understanding of the entire agreement between you and the government?

THE DEFENDANT: Can you repeat that again, sir. Sorry.

THE COURT: Yes.

Does this written plea agreement constitute your complete and total understanding of the entire agreement between you and the government?

THE DEFENDANT: Yes, your Honor.

THE COURT: Has anything been left out of this written plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Other than what is written in the agreement, has anyone made any promise to you or offered you any inducement either to plead guilty or to sign the plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Has anyone threatened you or forced you to plead guilty or to sign the plea agreement?

THE DEFENDANT: No, sir.

THE COURT: Has anyone made a promise to you as to what your sentence will be in this matter?

THE DEFENDANT: No, sir.

THE COURT: Mr. Eke, I'd like you now to tell me in your own words what you did that makes you believe you are guilty of the crime charged in Count One of the indictment. If you could just speak slowly and clearly, that would be great.

THE DEFENDANT: The plea allocution?

THE COURT: Yes.

THE DEFENDANT: From about 2016 to July 2018, in Georgia and via banks located within the Southern District of New York, I willingly entered into an agreement with others to defraud certain victims by participating in an e-mail theft scheme. Specifically, I participated in an agreement to

deceive foreign and United States victims into wiring funds intended for third-parties to the United States banks, bank accounts controlled by me and those controlled by my coconspirators, which I and they then transferred out of these accounts via cashier's checks. At the time I entered into this agreement, I knew it was illegal to do so, and we had no right to the said funds.

THE COURT: Thank you, Mr. Eke.

I take it you have a paper there in which you've written that out, is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: That's certainly common, very common, in a plea, just to ensure that you say things accurately, but I want to confirm that that is, in fact, what you did and that is an accurate statement. Is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: Mr. Cohen, do you know of any valid defense that would prevail at a trial or of any reason why Mr. Eke should not be permitted to plead guilty?

MR. COHEN: I do not, sir.

THE COURT: Ms. Zverovich, are there any additional questions that you would like me to ask of Mr. Eke?

MS. ZVEROVICH: No, your Honor.

THE COURT: Would you please just briefly describe what the government's evidence would be if the defendant were

to go to trial. You don't have to describe in much detail, given your sentencing submission that states the government's case as well, but go ahead.

MS. ZVEROVICH: Yes, your Honor. Just briefly.

At trial the government would show that between in or about 2016 and July 2018, Mr. Eke conspired with others to commit wire fraud through a fraudulent business e-mail compromise scheme, which defrauded some of the victims millions of dollars.

At trial the government's evidence would include the testimony of victims that received both e-mails and wire funds to bank accounts controlled by Eke and his coconspirators, copies of those e-mails that the victims received, and wire instructions that the victim sent in response.

The government would also introduce bank records and testimony showing that the defendant and his coconspirators opened bank accounts that they then used to receive and squander drug proceeds. The government would introduce fraudulent passports and other identification documents that were used during the course of the scheme.

With respect to one of the defendant's accounts, the government would introduce surveillance photographs showing that he conducted transactions into that account, which was used to receive proceeds from three separate victims.

The government would introduce bank records and

testimony showing that wire transfers from certain of the victims originated in or passed through the Southern District of New York.

THE COURT: Thank you.

Do both counsel agree that there is a sufficient factual basis for a guilty plea to Count One?

MR. COHEN: I do, your Honor.

MS. ZVEROVICH: I do as well, your Honor.

THE COURT: Does either counsel know of any reason why I should not accept the defendant's plea of guilty?

Ms. Zverovich.

MS. ZVEROVICH: No, your Honor.

THE COURT: Mr. Cohen.

MR. COHEN: No, sir.

THE COURT: Mr. Eke, because you acknowledge that you are in fact guilty as charged in Count One of the indictment, because I am satisfied that you know of your rights, including your right to go to trial, that you are aware of the potential consequences of your guilty plea, including the sentence that may be imposed upon you, and because I find that you are knowingly and voluntarily pleading guilty, I accept your guilty plea and enter a judgment of guilty on Count One of the indictment.

Counsel, are you prepared to proceed directly to sentencing?

Ms. Zverovich.

MS. ZVEROVICH: Yes, your Honor.

THE COURT: Mr. Cohen.

MR. COHEN: We are, your Honor. Thank you.

THE COURT: There seems to be some background noise from someone. I am not sure who that is. Mr. Eke at the jail. Understood.

In preparation for today's sentencing, I have received and reviewed the presentence report, dated December 14, 2020.

Mr. Cohen, I think I neglected to ensure that you filed anything in writing consenting to my review of the presentence report in advance of the plea, but I take it, in light of your request that it would be a joint proceeding, that you have no objection to my having done so, is that correct?

MR. COHEN: No, sir. I take the blame. I didn't even know that that was necessary. It's the first time I've done it since I started practicing. Sorry.

THE COURT: Understood. No worries and I should have reminded you under Rule 32(e)(1).

Do you agree that we can, nonetheless, proceed?

MR. COHEN: Yes, your Honor.

THE COURT: Ms. Zverovich, you agree as well?

MS. ZVEROVICH: I do, your Honor.

THE COURT: In addition to the presentence report, I have received and reviewed the defense submission, dated March

29, 2021, and the attachments to that submission, including letters addressed to me from Mr. Eke's mother, from the mother of his children, and from his brother, along with a couple of certificates from the Bureau of Prisons. I've also received the government's letter, dated April 6, 2021, along with, as I mentioned earlier, the proposed forfeiture order and restitution order.

Are there any additional submissions I should have received, Ms. Zverovich?

MS. ZVEROVICH: Nothing from the government, your Honor.

THE COURT: Mr. Cohen.

MR. COHEN: No, sir.

THE COURT: Mr. Cohen, have you read the presentence report?

MR. COHEN: I have with my client as well, your Honor.

THE COURT: Putting aside the guidelines for a moment, any objection to the factual accuracy of the report, Mr. Cohen?

MR. COHEN: No, sir.

THE COURT: I should note that in your sentencing submission you noted, I think, one inaccuracy, namely, I want to say it's paragraph 54, but give me a moment, incorrectly states that Mr. Eke was married from 2015 to 2016. You note that it was just a consensual relationship. I'm happy to make that correction. I'm not sure it's necessary.

MR. COHEN: A difference without a distinction for our purposes, but if Mr. Eke prefers, that's fine.

THE COURT: Mr. Eke, did you review the presentence report with Mr. Cohen?

THE DEFENDANT: Yes, sir, I did.

THE COURT: Did you have enough time to do that and to go over with him anything that you would wish to raise in connection with your sentencing with me? Did you have enough time to do that?

THE DEFENDANT: Yes, sir.

THE COURT: Ms. Zverovich, have you reviewed the presentence report?

MS. ZVEROVICH: I have, your Honor.

THE COURT: Putting aside the guidelines, do you have any objections to its factual accuracy?

MS. ZVEROVICH: No, your Honor.

THE COURT: Hearing no objections, I will adopt the factual recitation set forth in the presentence report, which will be made part of the record in this matter and kept under seal. In the event of an appeal, counsel on appeal may have access to the sealed report without further application to me.

Turning then to the sentencing guidelines, as counsel are undoubtedly aware, I'm not bound by the guidelines, but I do have to consider them in imposing an appropriate sentence.

Am I correct that the presentence report, the

calculation in the presentence report is consistent with the parties' agreement in the plea agreement?

Ms. Zverovich.

MS. ZVEROVICH: That's correct, your Honor.

THE COURT: Any objections to that calculation?

MS. ZVEROVICH: None from the government.

THE COURT: Mr. Cohen, any objections and is it correct that it's the same calculation?

MR. COHEN: Correct, and no objection.

THE COURT: Hearing no objection, based on the parties' agreement and my own independent calculation, I accept and adopt the guidelines calculation set forth in the presentence report. That is using the November 2018 edition of the guidelines, which, believe it or not, remains in effect.

I find that the offense level is 26, the criminal history category is I., guidelines range is 63 to 78 months' imprisonment, and supervised release range is one to three years, and the fine range is 25,000 to $5,583,595.60.

In the plea agreement both sides have agreed not to seek a departure from the guidelines range, that is, as distinct from what has come to be known as a variance.

Is that correct, Ms. Zverovich?

MS. ZVEROVICH: That's correct, your Honor.

THE COURT: Mr. Cohen, is that correct?

MR. COHEN: Right. No guidelines departures.

THE COURT: I have, nevertheless, reviewed and considered whether there is any basis for a guidelines departure and agree that there is no such basis in this matter.

With that, I will hear first from counsel, beginning with the government, and then give Mr. Eke an opportunity to speak, if he wishes to say something before I impose sentence.

I have, obviously, read your sentencing submissions. You don't need to repeat anything you have shared with me in writing. Anything that you think would be helpful, you may share it.

Ms. Zverovich, I'll start with you. If I could just ask you, in addition to whatever else you wish to share with me, elaborate on the footnote in your sentencing submission.

You state in footnote 2 that the defendant's version of how he met one of his codefendants and then became involved in the scheme is not, quote, fully consistent with your understanding of the facts, but you don't elaborate.

Could you just elaborate on that, please.

MS. ZVEROVICH: I can, your Honor.

The government's understanding from its investigation is that Mr. Eke had a preexisting relationship with Mr. Ironuah which was inconsistent with the statement in defense counsel's submission that he met Mr. Ironuah through Mr. Ashu. The government does not believe that it is a material fact to sentencing, but I just wanted to point that out in the

footnote.

THE COURT: Thank you. You may proceed.

MS. ZVEROVICH: Your Honor, the government has tried to submit a thorough sentencing memo to the Court, and I know your Honor has reviewed that, so I will keep my remarks brief.

Your Honor, this was a very serious and a very extensive fraud. Dozens of victims, all over the world, including here in New York, as well as in faraway places, were victimized because Mr. Eke and his coconspirators chose to commit a massive wire fraud conspiracy.

Importantly, Mr. Eke, and this really separates him from at least two of his codefendants in this case, played a key role, a key supervisory role in the scheme. He not only personally received proceeds directly from victims and then acted to launder them, but he also managed and supervised other coconspirators.

He, essentially, was the liaison between coconspirators in the United States who acted to open up bank accounts, sometimes using fraudulent identification documents, and used those bank accounts to get the victim's funds and coconspirators in Nigeria, who the government believes were the ones sending the fraudulent e-mails to the victims inducing them to send funds to accounts controlled by the defendant and his coconspirators. So he played a very important role through both his direct conduct and through his supervisory role. He

is personally responsible for victimizing at least 35 different victims who fraudulently wired approximately $2.7 million, and those are actual losses that were not recouped by the victims in this case and for which the defendant is personally responsible.

I will also just point out that this defendant, unlike many who may come before the Court on similar-type schemes, this defendant actually knew and understood how the scheme was being perpetrated. He wasn't just a money mule who received funds, not understanding where those funds came from. He actually understood that victims were being deceived through the e-mail scheme and nobody caught it because these e-mails from these victims attaching wire confirmations that they sent in response to get these e-mails were found in Mr. Eke's e-mail account. He then forwarded those e-mails to other coconspirators in order to arrange the receipt of those victims' funds. Mr. Eke played a supervisory role in the scheme, he knew how it worked, and he did it repeatedly over the course of at least approximately two years.

The government submits that the very serious nature of this offense, as well as the need to promote both specific deterrence, but also general deterrence, for these types of schemes warrants a guidelines sentence in this case.

THE COURT: Thank you very much.

Mr. Cohen, let me turn to you. And one question for

you is, the letter submitted on Mr. Eke's behalf referenced schizophrenia as one of his conditions, but I didn't see any record of that in either the presentence report or the record earlier in this case, given his examination.

Can you explain that. Maybe that's just the lay use of the term.

MR. COHEN: Judge, I think that I would have to accept it as a lay use of the term because I don't myself recall any specific diagnosis, nor did I ever consider any significant specific diagnosis, so I apologize.

THE COURT: Go ahead.

MR. COHEN: Thank you, sir.

Judge, I've asked for a variance in this case, and a very significant variance in this case, for a lot of reasons. I'd like to highlight just a number of them now because I know your Honor has spent quite sometime reviewing our sentencing submission.

Judge, I do think it is relevant that not only has the defense asked for a significant variance, but I do think that it's quite relevant that probation, that knows of this case in, shall we say, in more of a helicopter view than we could possibly know on our end of this case, has recommended a significant variance of 48 months.

Judge, I'd like to concentrate on the following in support of our request for a 30-month sentence, that you impose

no fine, that you impose a term of supervised release on our client.

Judge, look, Mr. Eke was taken into custody just short of two years ago down in Georgia, and he was brought up to New York. He consented to transfer. He consented to detention.

As the probation report notes, despite the fact that he was going through trauma and difficulty and acting out, he sustained no disciplinary infractions, not once, in all the time he has been in jail. He has comported himself well.

And, to his credit, your Honor referenced the fact that we included the limited amount of certificates that he was able to earn during these difficult times. Yet, he put his good mind to good use in trying to participate in whatever program that was available. Even in the best of times at MDC, I know the Court is aware that the programming inside of the local jail here is not what it is in terms of a designated facility. But, nonetheless, he was restricted in that regard as well.

So, Judge, I think that the government is right to call this a serious crime, and I think, as we stipulated, our client had a supervisory role, as I've understood the sentencing guidelines since I started practicing in '91. I remember in mandatory scheme cases out of the Second Circuit, such as *Shanubi*, and all of the factors that someone has to consider.

But I think if you peel back a little bit behind the supervisory role, what we do know is, Mr. Eke joined an ongoing crime. He didn't hatch this crime himself. He wasn't responsible for getting it off the ground. It was up and running. And at first he was exposed to Ashu and, for whatever reason, he saw Ashu operating at an economic level that, unfortunately, appealed to him.

It caused him to stray from the very specific religious upbringing he had and a very decent middle class background that he came from in Nigeria where after college he went back to the family business, the family business being a water business. That didn't really excite him. As many young people who are fortunate enough to have a way of making a living when they get out of school, he decided he wanted more. He decided he wanted to take on the challenge of coming to the United States.

Well, it certainly hasn't worked out well. But his intentions were good. He came here legally. He's an educated man. He is a loving father. The mother of his children have acknowledged that. He fell in love. He got married.

Importantly, he has the background behind him of his brother. Judge, here is something that I didn't include in our letter, but I have been in touch with his brother, if not biweekly, then on a weekly basis, whether it's been by e-mail, whether it's been by phone call.

He has a truly interested and decent family behind him who suffered from overseas through his mental illness and his problems and who have worked to help Ms. Feehan and myself provide the support necessary for Mr. Eke not only to get through serving the jail portion of his sentence, but, frankly, as you know, Judge, this COVID-19 outbreak has made serving a jail sentence just a different sphere of difficulty.

My client has an admitted supervisory role. He was taking instructions from somebody else and passing them on and, in the course of events, stealing from other people. He has acknowledged that, he is competent to acknowledge that, he knows he has done wrong, and I know he intends to address the Court when my comments are over.

He's 34 years of age, Judge, and I took a chance and I asked for a very large reduction here. Part of what we did is, we pointed out that the government -- although I didn't anticipate it from their letter, but the government had a recommendation or request that the Court sentence within the guidelines. Probation, as I mentioned, has found other factors other than the guidelines that are important here.

Legal experts that I have appeared in front of over the years, that I have studied their work, I have read their cases, I have had the privilege of litigating in front of, criticized those same guidelines for being inflated and only counting certain factors.

Now, I am not here to debate whether or not there is a better system, but at least I know some very smart people have commented that there is an inflation in 2B1.1 that should at least be considered. Some have even gone as far as coming up through the ADA of some shadow guidelines. That was obviously not adopted by Congress.

Judge, I respectfully submit that Mr. Eke had no record, had the potential to do right in his life, and demonstrated that he had taken his responsibilities seriously in his life with respect to his kids, with respect to his self-betterment. Certainly, he took a giant step back on a personal level, but I am proud to say that, through the help of Ms. Feehan especially, Mr. Eke has gained the stability in his life again, and he has a strong native intelligence, a strong religious background, a moral compass of right and wrong that certainly went awry here, no doubt about that. No minimization from him at all.

I would say, Judge, that when we look forward as to what is necessary to teach Mr. Eke a lesson, I would say that he is fairly unique, even as we look at the other codefendants in this case, in the sense, that, A, he had the trouble, the demonstrable trouble that he has had, and he's worked really hard to get himself back onto a gyration that's even keel. He has got his balance back. That took effort. Under the conditions of living for days at a time without a shower, days

at a time without a call, days at a time without an e-mail? I tip my hat to my client.

Your Honor, I understand, my client understands that there are a lot of victims here who did not have to lose money, and he did wrong, and he has served the sentence, and he will serve this sentence really for the rest of his life because there are going to be indelible memories that will, I respectfully submit, inure to his benefit in terms of, I really don't think that he's in a position to recidivate and put himself again in this setting, where he has endured more than the average inmate, whether it be on an objective or on a subjective level.

Judge, as you well know, 3553(a) asks the Court to consider his personal history and characteristics. I see that probation has. I certainly am advocating strenuously that you do the same. I submit, respectfully, that the government is relying on the guidelines here, and I am not suggesting to you that this isn't a serious crime. We acknowledge that. I know Mr. Eke feels the same way. I do think there is a fair sentence here, respectfully, under the guidelines.

For all those reasons, Judge, I most respectfully leave it in your hands. Thank you.

THE COURT: Thank you.

Just one housekeeping matter as well. I take it no objection to my entry of the restitution or forfeiture orders

that you have signed?

MR. COHEN: Judge, as I indicated earlier in the previous hearing, I had an opportunity yesterday to meet with Mr. Eke. We went over the forfeiture order for a final time, as well as the restitution order. In fact, they were read to him last week as well by Ms. Feehan. So he has heard them twice, and yesterday we were given authorization to execute the forms on his behalf.

THE COURT: Thank you.

Mr. Eke, is there anything that you wish to say before I sentence you?

THE DEFENDANT: Your Honor, actually, I want to take this opportunity to address the Court, and I want you to know that I accept full responsibility for my actions. There is no excuse for it, and I'm sorry. I apologize to the victims. I apologize to my family. This has been a very hard time on me because I have never been incarcerated before and it's all new to me. But I promise you that you will never see me again. Thank you.

THE COURT: Thank you, Mr. Eke.

Counsel, is there any reason why a sentence should not be imposed at this time?

Ms. Zverovich.

MS. ZVEROVICH: No, your Honor.

THE COURT: Mr. Cohen.

MR. COHEN: No, sir.

THE COURT: In imposing sentence, I am required to consider the factors that are set forth in Title 18, United States Code, Section 3553(a). I am not going to recite them in full in the interest of time. I figure that some other judge is going to try to enter this virtual courtroom at any moment.

Suffice it to say that I have and will consider all seven of the statutory factors, and ultimately I am required to impose a sentence that is sufficient but no greater than necessary to serve the purposes of sentencing that are set forth in subsection (a)(2).

There are certainly ample reasons to impose a substantial sentence in this case, starting with the seriousness of the offense that Mr. Cohen and Mr. Eke both acknowledged.

I agree, Mr. Eke, that you have no excuse for your participation in the offense. I think you said except for greed. That's not an excuse. I presume that you didn't mean to suggest it was an excuse, but maybe an explanation, but it is inexcusable. And the impact that this offense had on real people and real companies, very serious fraud and the kind of thing that both causes financial harm, but also insecurity and anxiety. It's a difficult crime to deter as well, all of which I think calls for a substantial sentence. And your role in it, the length of time that you participated in it, your leadership

in it, and all of that definitely calls for a substantial sentence.

Having said that, I do agree with probation and Mr. Cohen that a below-guidelines sentence is appropriate here for a number of reasons, including the fact that this is your first criminal conviction, your first brush with the law, the fact that it was a nonviolent offense, the mental health issues that you have had to cope with that, I imagine, made your detention thus far more difficult than it would have otherwise been, the immigration consequences that your conviction will have on you.

I understand from the presentence report that you were in the process of applying to become a United States citizen, having married a United States citizen, and, as I'm sure you are aware, this will almost certainly lead to your removal and deportation. I understand that that will certainly have a significant effect not only on you, but on members of your family.

Then most significantly, perhaps, is the COVID-19 pandemic. I do agree with Mr. Cohen that the time that anyone has spent in detention over the last 13, 14 months is just different time than normal and harder time than normal. I think that you and others who have been forced to be in detention during that difficult time deserve some credit for that.

I am pleased to see from the government's letter that you have been vaccinated. In that sense, I hope yourself are no longer at grave risk from being detained at the time of pandemic. But be that as it may, the risk that you lived with and the conditions under which you lived are ones that I think I am compelled to acknowledge in an appropriate sentence.

For those reasons, I do think a below-guidelines sentence is appropriate. I'm not quite prepared to go as far as Mr. Cohen has asked that I go, though I am prepared to go a bit further than probation has recommended and, among other things, probation did not take account, I think, of the COVID-19 pandemic and the effect that it had on your detention.

With that, I will state the sentence that I intend to impose.

Mr. Eke, it is the judgment of this Court that you are remanded to the custody of the Bureau of Prisons for a period of 40 months, that is, three years and four months, to be followed by a period of three years of supervised release.

During your term of supervised release you will be subject to the following mandatory conditions: You shall not commit another federal, state, or local crime. You shall not illegally possess a controlled substance. You shall refrain from any unlawful use of a controlled substance and submit to one drug test within 15 days of your release on supervised release and at least two periodic drug tests thereafter, as

determined by probation. You shall cooperate in the collection of DNA as directed by probation, and you shall satisfy your financial obligations that I will discuss shortly.

In addition, the standard conditions of supervised release, which are set forth in the presentence report and will be set forth in the judgment shall apply.

Finally, you must meet the following special conditions: You shall obey the immigration laws and comply with directives of immigration authorities. You shall submit your person, residence, place of business, vehicle, or any property or electronic device under your control to a search on the basis that the probation officer has a reasonable belief that contraband or evidence of a violation of the conditions of supervised release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation, and you shall inform any other residents that the premises may be subject to search pursuant to that condition.

You must participate in an outpatient mental health program, treatment program approved by the United States Probation Office. You must continue to take any prescribed medication, unless otherwise instructed by your health care provider. You must contribute to the cost of services rendered based on your ability to pay and the availability of third-party payment. I authorize the release of available

psychological or psychiatric evaluations and reports, including the presentence investigation report, to the health care provider.

If the probation officer determines, based on your criminal record, personal history or characteristics that you pose a risk to another person, including an organization, the probation officer, with the prior approval of me, the Court, may require you to notify the person about the risk, and you must comply with that instruction. The probation officer must contact the person and confirm that he has notified the person about the risk.

You shall provide the probation officer with access to any requested financial information, unless you have satisfied your financial obligation. You shall not incur any new credit charges or open additional lines of credit without the approval of the probation officer, unless you have satisfied your financial obligations, and you shall be supervised in the district of your residence.

I am not going to impose a fine. I agree with Mr. Cohen on that score, in light of your financial circumstances and the restitution obligations that you will take. On that score, in accordance with the restitution order that I will sign and docket, you are ordered to pay restitution in the amount of $2,691,908.30 in accordance with the terms and conditions set forth in that order. I will waive the

requirement of interest in light of your financial circumstances. I'm also imposing mandatory special assessment of $100, which shall be due and payable immediately.

In accordance with and pursuant to the terms of the forfeiture order that I will sign and enter as well, I order you to forfeit to the United States $365,205 in United States currency, a portion of which will be joint and several with your codefendant, but a portion of which you will be individually responsible for. Again, that's set forth in the order.

Does either counsel know of any legal reason why the sentence should not be imposed as stated?

Ms. Zverovich.

MS. ZVEROVICH: No, your Honor.

THE COURT: Mr. Cohen.

MR. COHEN: No, sir.

THE COURT: The sentence as stated is imposed. I find that the sentence is sufficient but no greater than necessary to satisfy the sentencing purposes set forth in Section 3553(a)(2), including the need to impose just punishment for the offense and provide deterrence to criminal conduct, and to ensure that the defendant does not commit additional crimes.

My deputy is helpfully pointing out to me that I neglected to impose conditions regarding restitution regarding the time that Mr. Eke is in detention. Let me just elaborate

on that.

During your term of imprisonment, Mr. Eke, you shall make installment payments towards your restitution obligation. You may do so through the inmate financial responsibility plan of the Bureau of Prisons. Pursuant to BOP policies, BOP may establish a payment plan by evaluating your six-month deposit history and subtracting an amount determined by the BOP to be used to maintain contact with family and friends, and the remaining balance may be used to determine repayment schedule. BOP staff shall help you develop a financial plan and shall monitor your progress in meeting your restitution obligation.

Mr. Cohen, any requests with respect to a designation location?

MR. COHEN: No, nothing specific, Judge.

THE COURT: Mr. Zverovich, are there open counts to be dismissed at this time?

MS. ZVEROVICH: Yes, your Honor. The government moves to dismiss Count Two of the indictment.

THE COURT: Count Two and any other open counts, for that matter, are dismissed at this time.

Mr. Eke, to the extent that you did not give up your right to appeal through your guilty plea and the plea agreement that you entered into in connection with your plea, you do have the right to appeal. Any notice of appeal must be filed within 14 days of entry of the judgment of conviction. If you cannot

afford to pay the cost of an appeal, you may apply for leave to appeal *in forma pauperis*.

Ms. Zverovich, let me confirm first that you've been able to hear and see throughout this proceeding?

MS. ZVEROVICH: I have, your Honor.

THE COURT: I don't want to jinx myself, but thus far this has been the best technology experience I've had with CourtCall in a long time.

Ms. Zverovich, anything else as well?

MS. ZVEROVICH: Your Honor, just one brief thing with respect to the restitution order.

I believe that the documents that the government submitted to your Honor has a provision for interest. So if the Court is not ordering interest, then perhaps that should be crossed out before the order is docketed. It is on page -- one of second, your Honor.

THE COURT: Unfortunately, Mr. Cohen seems to be gone from the screen.

MR. COHEN: I am gone from the screen, somehow, but I am here orally, and I can hear everything that's going on. I could log back in, if you want, but it's going to take me a minute or two.

THE COURT: If you are willing to proceed, since we are just wrapping up, let's not do that. Of course, I shouldn't have said what I said.

Ms. Zverovich, I will thank you for pointing that out. I will actually strike that provision. I think it would be inappropriate, given Mr. Eke's financial circumstances. Thank you for that.

Mr. Cohen, until a moment ago, any problem hearing and seeing throughout this proceeding?

MR. COHEN: I've had no problems, Judge. It's been fine. Thank you.

THE COURT: Thank you.

Anything further from you?

MR. COHEN: No, sir. But thank you.

THE COURT: Mr. Eke, you've been able to hear and see me throughout this proceeding?

THE DEFENDANT: Yes, your Honor.

THE COURT: Thank you.

With that, everybody, stay safe and stay healthy.

Mr. Eke. Good luck to you and your family.

We are adjourned. Have a good day.

(Adjourned)